IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK06-80666 |
| | ) | |
| CONNIE LYNN MITCHELL, | ) | CH. 13 |
| | ) | |
| Debtor. | ) | |

**MEMORANDUM**

      Hearing was held in Omaha, Nebraska on September 28, 2006, on confirmation of Debtor's Chapter 13 plan (Fil. #10), and an objection thereto by eCAST Settlement Corporation (Fil. #18). The parties were given the opportunity to submit post-hearing briefs, with the last such brief being submitted on December 7, 2006. Upon such submission, the matter was taken under advisement. Thalia Carroll appeared for Debtor, and Joel M. Carney appeared for eCAST Settlement Corporation ("eCAST"). This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(L).

      This case presents a matter of first impression in this district. The sole issue in dispute is whether, for purposes of 11 U.S.C. § 1325(b)(1)(B), Debtor's "projected disposable income" should be calculated by utilizing the means testing Form B22C or by using the difference between Schedules I and J. The applicable statute provides as follows:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan --
> 
>     (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> 
>     (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
> 
>   (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended --
> 
>     (A)   (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
> 
>           (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed

15 percent of gross income of the debtor for the year in which the contributions are made; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

(3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than [certain median income provisions].

11 U.S.C. § 1325(b).

The applicable facts are not in dispute:

1. Debtor filed for relief pursuant to Chapter 13 of the United States Bankruptcy Code on May 18, 2006.

2. Debtor is a widow with three dependents.

3. Pursuant to Federal Rule of Bankruptcy Procedure 1007, Debtor completed Official Form B22C to calculate income and expenses pursuant to 11 U.S.C. § 1325(b) and pursuant to 11 U.S.C. § 707(b)(2). The income and expense amounts used in Form B22C have not been challenged, and it is assumed that Debtor accurately completed such form.

4. Debtor is an above-median debtor for purposes of § 1325(b)(3) and her "applicable commitment period" is five years pursuant to § 1325(b)(4).

5. Form B22C identifies monthly disposable income under § 1325(b)(2) in the amount of $447.00.

6. A comparison of Debtor's total monthly income in Schedule I ($6,629.85) to Debtor's monthly living expenditures set forth in Schedule J ($3,649.90) indicates a monthly net income (the difference between Schedules I and J) of $2,979.95.

7. The objecting creditor, eCAST, is the holder of two unsecured claims against Debtor having balances totaling $58,135.66 as of the date of the bankruptcy filing, which amount represents approximately 48% of Debtor's scheduled unsecured non-priority debt.

Since 1984, § 1325(b)(1) of the Bankruptcy Code has required that if an unsecured creditor or the Chapter 13 Trustee objects, a plan cannot be confirmed unless all claims are paid in full or the plan provides that all of the debtor's projected disposable income will be paid to unsecured creditors. While that concept is straightforward enough, bankruptcy courts have struggled over the years in determining what expenses are reasonably necessary for the debtor's maintenance or support when

calculating projected disposable income. Such issues commonly arose in connection with higher income debtors with higher than normal expenses.

With the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Congress has removed some of the guesswork for bankruptcy judges. Under new 11 U.S.C. § 1325(b)(3), for above-median debtors, the expenses to be deducted in calculating disposable income "shall be determined" under Bankruptcy Code § 707(b)(2)(A) and (B). In October 2005, the Judicial Conference of the United States promulgated Official Form B22C to enable debtors to provide the information necessary to calculate whether the debtor's income is above or below the median, and if above, to calculate the deductions allowed by § 707(b)(2) and for calculation of monthly disposable income under § 1325(b)(2) and (3). Under the form, the debtor's monthly expenses are certain monthly expense amounts specified under the National Standards and Local Standards and the debtor's actual monthly expenses for categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides. Thus, Congress has basically substituted national and local standards issued by the Internal Revenue Service for actual expenses in certain categories, prompting at least one court to refer to the means test as "a sort of parallel universe * * *." *In re Gress*, 344 B.R. 919, 922 (Bankr. W.D. Mo. 2006). *See also In re Barr*, 341 B.R. 181, 185 (Bankr. M.D.N.C. 2006) (stating "[t]he use of 'shall' in section 1325(b)(3) is mandatory and leaves no discretion with respect to the expenses and deductions that are to be deducted in arriving at disposable income").

Since the effective date of BAPCPA, bankruptcy courts have come down on virtually every conceivable side of how to determine the debtor's "projected disposable income" available "to make payments to unsecured creditors under the plan" as such terms are used in 11 U.S.C. § 1325(b)(1)(B). New decisions pertaining to this disposable income requirement are published nearly every day from bankruptcy courts around the country, and justice would not be served by attempting to list and categorize all decisions here. Suffice it to say that this is a case of first impression in this district. Some of the issues faced in other districts, such as whether the word "projected" modifies the words "disposable income" as used in § 1325(b)(1)(B) and § 1325(b)(2), are not applicable in this case because, at least on the income side, the numbers are nearly identical.[1] The situation could arise (as it has in other courts) where the backward-looking Form B22C test fails to account for "projected" issues such as anticipated income increases or anticipated increases or reductions in expenses, thereby necessitating consideration of the word "projected" in § 1325(b)(1)(B). However, no such issues exist here. The sole issue in dispute is whether the net income available by comparing Schedules I and J should be determinative in formulating the required Chapter 13 plan payment or whether the disposable income resulting from application of Form B22C should be used.

---

[1]Specifically, the objecting party is not asserting that the income figures used in Form B22C are not reflective of the actual projected income of Debtor, nor is it claiming that any expense deduction is not proper. Instead, the objecting party simply argues that Schedules I and J should trump the means test in determining disposable income.

The purpose of the means test pursuant to Form B22C is to determine how much of the debtor's projected disposable income should be "applied to make payments to *unsecured* creditors under the plan." 11 U.S.C. § 1325(b)(1)(B) (emphasis added). It is a mechanical test to be applied as set forth in the Official Form. Form B22C in this case reveals monthly disposable income under § 1325(b)(2) of $447.00. Thus, § 1325(b)(1)(B) tells us that, at a minimum, in order for this plan to be confirmed, at least $447.00 per month must be available to make payments to unsecured creditors under the plan. Note that this does not mandate a plan payment of only $447.00. Instead, the plan payment needs to be higher than $447.00 in order to have enough money available, when all is said and done, to ensure the required payment to unsecured creditors.

The creditor's argument that Schedules I and J should determine disposable income rather than Form B22C overlooks the fact that the form and the schedules serve different purposes. Comparing Form B22C to Schedules I and J is not like comparing apples to apples.[2] Form B22C serves to calculate the minimum amount to be paid to unsecured creditors under a plan based on expenditure standards that Congress has identified as reasonable, apparently without regard to actual expenditures in many situations. In a perfect world, a comparison of Schedules I and J should identify how much net income a debtor has available after actual expenses are deducted. Sometimes, the results of Schedules I and J simply cannot be reconciled with the results of Form B22C.[3] In the words of one bankruptcy judge:

> While this provision of the new statute does not perform as advertised, perhaps prompting trustees, unsecured creditors and even some bankruptcy judges to long for the "good old days" of reviewing Schedules I and J and determining whether private school, high speed internet access, and a pack-a-day habit were reasonable and necessary for the debtor's maintenance and support, the mandate of new § 1325(b)(3) is clear. The court must decide the "amounts reasonably necessary to be expended" for above-median debtors based solely on § 707(b)(2)(A) and (B), i.e. Form B22C, not on excess income over expenses from Schedule J.

*In re Guzman*, 345 B.R. 640, 646 (Bankr. E.D. Wis. 2006).

---

[2]In fact, in the words of one bankruptcy judge from another district who wishes to remain anonymous: "It is not even like comparing apples and oranges, it is more like oranges and monkeys or something. You could have a large number result from Schedules I and J with a much smaller number on B22C and still have the two be completely consistent and lead to exactly the same plan."

[3]Such reconciliation is made more difficult in this case because of discrepancies in some of the numbers used (or not used). For example, Form B22C indicates Debtor has mandatory payroll deduction of $431.56, but those do not appear as payroll deductions on Schedule I. Further, Debtor's plan indicates a student loan debt is to be paid outside of the plan, but Schedule J fails to show the amount of the installment payment on that student loan debt. Also, Debtor does not at this time have a car payment, but may very well have or need one at some time during the life of the plan.

The creditor's position also overlooks the fact that the means test of B22C would be rendered basically meaningless if a comparison of Schedules I and J were to control. To reconcile this, some courts have opted to consider the means test as a "starting point." *See, e.g., In re Gress*, 344 B.R. 919, 922 (Bankr. W.D. Mo. 2006). However, as stated previously, by use of the word "shall," it appears Congress mandated the use of the B22C test as to "reasonably necessary" expenses and there is no indication that this Debtor's "projected" income will be any different than her current monthly income.

Debtor's plan proposes payments of $868.00 per month for 60 months, or a total of $52,080.00. In order to return $447.00 per month for 60 months to unsecured creditors, the total amount to be paid to unsecured creditors over the life of the plan would have to be at least $26,820.00. From the plan payments, the only other debts to be paid through her plan are a secured debt to Nebraska Furniture Mart for approximately $3,076.00, remaining attorney fees and costs of $1,804.00, and statutory Trustee's fees.[4] Those amounts, combined with the minimum of $26,820.00 due to unsecured creditors under the means test, are well below the amount Debtor proposes to pay into the plan, so unsecured creditors will receive much more than the $26,820.00 minimum required by Form B22C. The creditor has not offered any evidence that Debtor's "projected" disposable income would be any greater during the plan than it was on the date of filing. Therefore, for purposes of 11 U.S.C. § 1325(b)(1)(B), Debtor's proposed plan does provide that all of Debtor's projected disposable income to be received in the applicable commitment period will be applied to make payments to unsecured creditors under the plan.

Since, in this case, the objecting party has not questioned the actual amounts listed on Form B22C, and since the proposed plan payment is sufficient to ensure the required payment to unsecured creditors, the objection to plan by eCAST must be overruled. However, pursuant to the Order (Fil. #23) settling the objection by the Chapter 13 Trustee, Debtor shall file an amended plan by February 6, 2007.

Separate order to be entered.

DATED: January 5, 2007.

BY THE COURT:

  /s/ Thomas L. Saladino
United States Bankruptcy Judge

Notice given by the Court to:
    *Thalia Carroll        Kathleen Laughlin
    Joel M. Carney        U.S. Trustee

---

[4] Debtor's home mortgage and student loan obligations are to be paid outside of the plan directly by Debtor.

Movant(*) is responsible for giving notice to other parties if required by rule or statute.